UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIAN ALEJANDRO FLORES COLCHADO, JULIAN LUGO HERNANDEZ, ISAIAS ESPINO MARTINEZ, JESUS LEOCADIO ZAVALA RUIZ, OCTAVIO GALAVIZ CORONA, VICTOR COLCHADO ADRIANO, FERNANDO PEREZ CALDERA, OSWALDO BELTRAN MARTINEZ, CARLOS BIBIANO CASTRO HERNANDEZ, JUAN MANUEL VARGAS RODRIGUEZ, DERIAN ENRIQUE GALVAN MARTINEZ, GREGORIO GARCIA MACIAS, and others similarly situated,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **BAYOU SUGAR GROWERS, INC.** | ) ) |
| **Defendant.** | ) ) ) |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1.    Plaintiffs are migrant workers employed during the sugarcane grinding season by Bayou Sugar Growers, Inc. ("Bayou") under the federal H-2A work visa program between 2021 and 2024. Plaintiffs file this action on behalf of themselves and all other similarly situated workers against Bayou. Plaintiffs bring this action to secure and vindicate rights afforded them by the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq*. ("FLSA"), the Louisiana Wage

Payment Law, Louisiana Revised Statutes 23:631, *et seq.*, the law of contracts, La. Civ. Code art. 1906, *et seq*, and for unjust enrichment, La. Civ. Code art. 2298.

2.     Bayou obtained approval to employ Plaintiffs as H-2A visa workers by representing falsely that Plaintiffs would be employed as agricultural workers. They were not. Instead, Bayou employed Plaintiffs as non-agricultural workers transporting sugarcane grown by various farmers in heavy tractor-trailer trucks over public roads to a sugar mill operated by the Louisiana Sugar Cane Cooperative, Inc. in St. Martinville, Louisiana. Bayou misclassified Plaintiffs and their co-workers in this manner in an attempt to secure multiple labor-law advantages that apply only to agricultural workers, including accessing the capless H-2A visa program, avoiding overtime, and paying an unlawfully low agricultural wage rate—well below the local prevailing wage for heavy truck drivers.

3.     Plaintiffs and others similarly situated regularly were employed more than 40 hours during each workweek, but Bayou never paid Plaintiffs and other similarly situated workers overtime wages.

4.     Bayou breached the terms of the employment contracts with Plaintiffs and their co-workers by failing to pay them the proper hourly wage rate for the work they performed as heavy tractor-trailer truck drivers and by not paying overtime. After Plaintiffs and their co-workers complained to Bayou about the unlawfully low wages and asked Bayou to pay them the appropriate wages in accordance with the terms of their H-2A employment contracts, Bayou terminated their employment.

5.     Plaintiffs seek an award of money damages, declaratory and injunctive relief, consequential, and compensatory damages, punitive damages, pre- and post-judgment interest, and attorney's fees to make them whole for damages each of them suffered due to Bayou's

violations of the law. Plaintiffs seek declaratory relief to ensure that they and other employees of Bayou are not subjected to similar practices in the future.

## JURISDICTION

6.      Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; and by 28 U.S.C. §1331, this action arising under the laws of the United States.

7.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. §1367 because Plaintiffs' state claims are so closely related to their federal claims that they form part of the same case or controversy.

8.      Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

9.      Venue is proper in this district under 28 U.S.C. §§1391(b), (c), and (d). As set out herein, Bayou conducted business in this district; Bayou assigned Plaintiffs to perform work in this district; and part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

10.      Plaintiff Julian Alejandro Flores Colchado was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

11.      Plaintiff Julian Lugo Hernandez was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

12.      Plaintiff Isaias Espino Martinez was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

13.      Plaintiff Jesus Leocadio Zavala Ruiz was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

14.     Plaintiff Octavio Galaviz Corona was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

15.     Plaintiff Victor Colchado Adriano was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

16.     Plaintiff Fernando Perez Caldera was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

17.     Plaintiff Oswaldo Beltran Martinez was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

18.     Plaintiff Carlos Bibiano Castro Hernandez was employed seasonally by Bayou as a heavy truck driver in 2024.

19.     Plaintiff Juan Manuel Vargas Rodriguez was employed seasonally by Bayou as a heavy truck driver in 2022, 2023, and 2024.

20.     Plaintiff Derian Enrique Galvan Martinez was employed seasonally by Bayou as a heavy truck driver in 2024.

21.     Plaintiff Gregorio Garcia Macias was employed seasonally by Bayou as a heavy truck driver in 2021, 2022, 2023, and 2024.

22.     At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2A temporary foreign worker visa program, 8 U.S.C. 1101(a)(15)(H)(ii)(a) and possessed H-2A visas.

23.     Defendant Bayou is a Louisiana corporation that maintains its principal address in St. Martinsville, St. Martin Parish, Louisiana, and that operates business throughout Louisiana, including in the parishes of Iberville and Pointe Coupee. At all times relevant to this action, Bayou was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), in

- 4 -

that it transported sugarcane to a sugar processing mill operated by the Louisiana Sugar Cane Cooperative, Inc. that sold its products to businesses in various states outside of Louisiana. Plaintiffs and the other employees of Bayou regularly and recurrently handled goods and materials produced for interstate commerce, including raw sugarcane.

24.     Bayou was Plaintiffs' employer, as it contractually promised it was an employer and petitioned to be the employer of Plaintiffs through written employment contracts submitted to United States Department of Labor (DOL).

## FACTS

## The Federal H-2 Visa Program

25.     The federal agricultural "guestworker" program, currently known as the H-2A program, was created by the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, and is implemented through regulations set out at 20 C.F.R. §§ 655.100 to 655.185 and 29 C.F.R. §§ 501.0 to 501.47. The H-2A program authorizes the admission of foreign workers to perform agricultural labor or services of a seasonal or temporary nature.

26.     An employer in the United States may import foreign workers to perform agricultural labor or services of a temporary nature if the DOL certifies that (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1), and 20 C.F.R. § 655.100. Foreign workers admitted in this fashion are commonly referred to as "H-2A workers."

27.     There is no "cap" or limit to the number of H-2A agricultural visas the United States government may certify and issue each year.

28.     The H-2B visa program allows employers who meet specific regulatory requirements to bring foreign workers to the United States to fill temporary non-agricultural jobs. An employer in the U.S. may hire foreign workers to perform temporary non-agricultural labor if the DOL certifies that (1) there are insufficient available workers within the United States to perform the jobs; and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. § 1101(a)(15)(H)(ii)(b); 8 U.S.C. § 1188(a)(1).

29.     There is a statutory "cap" or limit to the number of non-agricultural H-2B visas that the United States government may certify and issue each year.

30.     Employers seeking the admission of H-2A workers must file an Application for Temporary Employment Certification with the DOL. 20 C.F.R. § 655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. 20 C.F.R. § 655.121(a)(1). Employers must certify that the job offer describes the actual terms and conditions of the employment being offered and that it contains all material terms of the job. 20 C.F.R. § 653.501(c)(3)(viii).

31.     The Application for Temporary Employment Certification requires an employer to state the job title based on the job duties that will be performed by the prospective H-2A workers. The Application for Temporary Employment Certification requires an employer to identify its principal business using the North American Industry Classification System (NAICS) code that applies.

32.     Federal regulations establish the minimum benefits, wages, and working conditions that must be offered to H-2A workers by the petitioning employer in order to avoid adversely affecting similarly situated U.S. workers. 20 C.F.R. §§ 655.120, 655.122 and 655.135.

Among these terms is a requirement that for every hour or portion thereof worked during a pay period, the employer will pay the workers the highest of the agricultural adverse effect wage rate (AEWR), the applicable prevailing wage for the occupation in the geographic area where the work is to be performed, the federal minimum wage, or the state minimum wage. 20 C.F.R. § 655.120.

33.    The following adverse effect wage rates applied to H-2A workers employed in certain agricultural occupations in Louisiana between 2021 and 2024:

    2021: $11.88 per hour
    2022: $12.45 per hour
    2023: $13.67 per hour
    2024: $14.53 per hour

34.    In February 2023, the DOL published a final rule revising the methodology for determining hourly AEWRs. 20 C.F.R. § 655.120(b)(l). Under this rule, H-2A jobs with certain Standard Occupational Codes (SOCs), including operation of heavy trucks, are subject to an AEWR based on data from the Occupational Employment and Wage Statistics (OEWS) survey administered by the DOL's Bureau of Labor Statistics. 20 C.F.R. § 655.120(b)(ii)(A).  For "Heavy and Tractor Trailer Truck Drivers" H-2A jobs (SOC 53-3032), in Louisiana that were certified after April 1, 2023, the applicable AEWR (effective from July 1, 2023 through June 20, 2024) was $23.14 per hour. The 2024 AEWR (effective July 1, 2024) for these jobs was $23.93 per hour.

35.    In contrast, employers seeking certification to employ H-2B non-agricultural workers must offer wages at least equal to the prevailing wage for the occupation in the area of intended employment, obtained from the National Prevailing Wage Center ("NPWC") of the DOL. 20 C.F.R. § 655.10. Absent employer-submitted data, the NPWC prevailing wage is the

arithmetic mean of the wages of workers similarly employed (as defined by the Bureau of Labor Statistics' Occupational Employment Statistics codes) in the area of intended employment.

36.    For every season Plaintiffs worked for Bayou, the NPWC prevailing wage applicable to the locations in which they performed work was notably higher than the agricultural AEWR paid by Bayou. For example, in St. Martin Parish, where Bayou is located, the NPWC prevailing wage rate for heavy and tractor-trailer truck drivers (SOC 53-3032), was:

> Between July 2021-June 2022: $19.52
> Between July 2022-June 2023: $21.73
> Between July 2023-June 2024: $21.71
> Between July 2024-June 2025: $24.86

### Defendant Bayou's Participation in the Federal H-2A Visa Program

37.    Bayou filed applications with the DOL seeking temporary employment certification to employ foreign workers pursuant to the H-2A visa program for work in Louisiana in 2021, 2022, 2023, and 2024. These temporary labor certification applications sought certification for the following time periods and for the following number of individuals:

> 2021: 8/22/21-1/31/22 (130 H-2A workers)
> 2022: 8/20/22-1/31/23 (163 H-2A workers)
> 2023: 8/20/23-1/31/24 (149 H-2A workers)
> 2024: 8/20/24-1/31/25 (190 H-2A workers)

38.    Bayou deliberately sought to mislead government officials reviewing its applications in order to receive approval to employ H-2A workers by incorrectly stating that it grew crops and that the work to be performed was "agricultural." Bayou represented to DOL that Plaintiffs would "perform harvesting and agricultural duties," including specifically "[m]anual labor to cut sugarcane from its growing position on farm sites" and "[o]perate farm vehicles/equipment like combines, harvesters, and similar agricultural equipment."

39.     During the time period relevant to this lawsuit, Bayou never engaged in the growing of sugarcane. Rather, it operated a fleet of heavy tractor-trailer trucks to transport harvested sugarcane grown by farms it did not own to the mill operated by the Louisiana Sugar Cane Cooperative.

40.     The application forms submitted by Bayou in 2021, 2022, and 2023 incorrectly listed the job title that Plaintiffs would perform as "Agricultural Equipment Operators," when in fact the position was for heavy tractor-trailer truck drivers.

41.     The application forms submitted by Bayou in 2021, 2022, 2023, and 2024 incorrectly listed Bayou's principal business as sugarcane farming, NAICS Code 111930, when, in fact, Bayou did not engage in the growing of sugarcane.

42.     Bayou identified attorney Brandon Davis as its H-2A "attorney or agent" in its temporary employment certification applications. Attorney Davis was on notice and aware of the applicability of overtime to sugarcane truck drivers employed by entities other than the farm that produced the sugarcane being transported, due to his involvement in the *Alvarez-Barron v. Sterling Sugars Sales Corporation* litigation, Civil Action No. 6:21-cv-03741, Western District of Louisiana, and binding precedent in *Wirtz v. Osceola Farms Co*., 372 F.2d 584 (5th Cir. 1967). As Bayou's H-2A attorney agent, Mr. Davis facilitated Bayou's temporary employment certification applications and is an authorized agent of Bayou.

43.     Each of the temporary employment certification applications described above included a clearance order that identified Bayou Sugar Growers, Inc. as a prospective employer or joint employer of the H-2A workers.

44.     As required by 20 C.F.R. § 653.501(c)(3)(viii), each of the clearance orders included a certification that it described the actual terms and conditions of employment being

offered and contained all material terms of the job. These certifications were signed under penalty of perjury by Randy Duplantis, who identified himself as the President of Bayou Sugar Growers, Inc.

45.     The temporary employment certification applications include, among other things, the assurance that all working conditions complied with applicable Federal and State minimum wage, child labor, social security, health and safety, labor contractor registration, and other employment-related laws. 20 C.F.R. § 653.501(c)(3)(iii) and 20 C.F.R. § 655.135(e).

46.     In its temporary employment certification applications and the accompanying clearance orders, Bayou knowingly misrepresented the job duties to be performed by the H-2A workers, including Plaintiffs. The 2024 clearance order indicated that the workers would be employed hauling sugarcane "produced by the employer" to the milling facility. In fact, the sugarcane hauled by Plaintiffs and the other H-2A workers was not produced by Bayou, but instead by individual independent sugarcane growers. In prior years and in 2024, the clearance orders represented that workers would be engaged in "[m]anual labor to cut sugarcane from its growing position *on farm sites*," and that workers "may" also operate farm trucks, when in fact Plaintiffs never performed manual harvesting labor on farm sites, and only transported sugarcane away from independent farms in heavy tractor-trailer trucks.

47.     Bayou's false statements in its temporary employment certification applications and the accompanying clearance orders were made under oath. Bayou's false statements in its temporary employment certification applications and the accompanying clearance orders were made, *inter alia*, to obtain certification of the positions as agricultural labor or services and thereby enable Bayou to pay Plaintiffs and other employees wages at rates substantially below that required by law.

48.     The DOL reviewed Bayou's temporary employment certification applications, which explicitly and implicitly incorporated the DOL's regulations at 20 C.F.R. § 655 Subpart B and any obligations required under 8 U.S.C. 1188. The DOL approved Bayou's temporary employment certification applications, which had misrepresented the nature of the job duties and the industry in which the workers would be engaged, allowing Bayou to import H-2A workers to fill the manpower needs set out in its temporary labor certification applications. The approved temporary employment certification applications promised to pay the highest available wage between the AEWR, prevailing wage, or federal or state minimum wage for the job described.

### Plaintiffs' Employment with Bayou

49.     Plaintiffs and their co-workers maintain their permanent residences at various locations in Mexico.

50.     Plaintiffs are native Spanish speakers. Plaintiffs are relatively unfamiliar with their legal rights in the United States or the requirements of nonimmigrant labor petitions made by U.S. employers.

51.     Plaintiffs spent considerable amounts of money to travel from their hometowns in Mexico to the United States to work for Bayou in Louisiana.

52.     Bayou required a CDL or equivalent license as a minimum job qualification, and Plaintiffs incurred expenses to obtain these special commercial drivers' licenses and associated medical examinations that would allow them to drive heavy tractor-trailer trucks in the United States for Bayou.

53.     Plaintiffs incurred transportation expenses to travel from their hometowns to the U.S. Consulate for the processing of their H-2A visas, and they incurred lodging expenses while they waited for their H-2A visa applications to be processed.

54.    Plaintiffs incurred transportation expenses to travel from their hometowns to Bayou's work location in Louisiana.

55.    The expenses detailed in paragraphs 51 to 54 were primarily for the benefit of Bayou, and were not properly reimbursed during Plaintiffs' first pay periods.

56.    Bayou failed to reimburse Plaintiffs for the pre-employment expenses detailed in paragraphs 51 to 54 within the first workweek. These de facto deductions reduced Plaintiffs' wages for the first workweek below the FLSA-mandated minimum wage.

57.    Bayou transports harvested sugarcane from farm fields to the mill operated by the Louisiana Sugar Cane Co-operative. The mill receives sugarcane produced on numerous farms in Louisiana and processes it for sale in interstate commerce.  None of these farms are owned by Bayou.

58.    Plaintiffs' job assignments throughout their employment with Bayou consisted of driving heavy trucks in excess of 26,000 pounds transporting sugarcane produced by independent farms to a sugarcane processing mill. Despite representing in its H-2A applications that it was a sugarcane grower and that it had grown the sugarcane being hauled, the sugarcane transported by Plaintiffs was produced by independent farms rather than Bayou.

59.    Plaintiffs received the Louisiana agricultural AEWR for their work, which was $11.88 per hour in 2021, $12.45 per hour in 2022, and $13.67 per hour in 2023. In 2024, Bayou's clearance order disclosed a pay rate of $21.67 per hour, but despite this, Bayou paid Plaintiffs only $14.62 per hour.

60.    Plaintiffs worked long hours during their employment with Bayou. They regularly worked over 180 hours in a two-week pay period.

61.     Plaintiffs and similarly situated workers drove trucks exclusively within the state of Louisiana only, and did not drive across state lines.

62.     Bayou did not pay Plaintiffs or other H-2A workers the higher applicable prevailing wage to which they were entitled for non-agricultural heavy truck driving.

63.     Bayou paid Plaintiffs and its other employees by two-week pay periods for their labor.

64.     Plaintiffs' co-workers who did the same jobs driving heavy trucks worked a similar schedule and hours for the 2021, 2022, 2023, and 2024 seasons.

65.     During the 2021, 2022, 2023, and 2024 seasons, respectively, Plaintiffs and similarly situated co-workers were paid in the same fashion, multiplying straight time hours worked by the rates as described in paragraph 59 above.

66.     In 2021, 2022, 2023, and 2024, Plaintiffs and similarly situated workers were not compensated at one and one-half the workers' regular rate or any other premium rate for time each of them was employed in excess of 40 hours in a week.

67.     On October 21, 2024, Plaintiffs requested a meeting with Bayou supervisor and manager, John Hebert, and asked to be paid the wage rates promised in their employment contracts. John Hebert responded that Bayou would not raise their wages.

68.     In response to Plaintiffs asserting their right to be paid the wage rates promised by their H-2A employment contracts, Bayou threatened to fire Plaintiffs and other co-workers. The next day, Bayou further retaliated by calling the St. Martinville sheriff's office to remove Plaintiffs and their co-workers from the worker housing and followed through on its threats by publicly terminating Plaintiffs' Julian Alejandro Flores Colchado, Julian Lugo Hernandez, Isaias Espino Martinez, Jesus Leocadio Zavala Ruiz, Octavio Galaviz Corona, Victor Colchado

Adriano, Fernando Perez Caldera, and Oswaldo Beltran Martinez employment and intimidating and coercing the remaining workforce in this display of force. Plaintiffs Carlos Bibiano Castro Hernandez, Juan Manuel Vargas Rodriguez, Derian Enrique Galvan Martinez, and Gregorio Garcia Macias were subsequently terminated by Bayou. These unlawful terminations were done in retaliation for Plaintiffs' complaints about underpayment.

### Collective Action Allegations

69.     All claims set forth in Count I and Count II are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to 29 U.S.C. § 216(b). These similarly situated individuals consist of all workers employed by Bayou during 2021, 2022, 2023, or 2024 to drive heavy trucks to transport sugarcane between various farms in Louisiana and the mill operated by the Louisiana Sugar Cane Co-operative. These similarly situated workers include all workers employed by Bayou in 2021, 2022, 2023, and 2024 pursuant to H-2A visas.

70.     Pursuant to their temporary labor certification applications and the accompanying clearance orders, Bayou employed Plaintiffs and approximately 130 H-2A workers in the 2021 season, 163 H-2A workers in the 2022 season, 149 H-2A workers in the 2023 season, and 190 H-2A workers in the 2024 season.

71.     Bayou failed to pay the similarly situated workers overtime wages as required by the FLSA for those workweeks they were employed in excess of 40 hours in a workweek. Bayou also failed to reimburse similarly situated workers for pre-employment expenses incurred for Bayou's benefit, such as those described in paragraphs 51 to 54, within the first workweek, which de facto deductions reduced these workers' wages below the FLSA-mandated minimum wage.

72.     Pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all similarly situated workers employed by Bayou during 2021, 2022, 2023, or 2024. The named Plaintiffs have consented to be party plaintiffs in this FLSA collective action and copies of their signed FLSA consent forms are attached hereto as Exhibit 1.

<u>**COUNT I**</u>

**FLSA OVERTIME WAGES**
**(Collective Action)**

73.     This count sets forth a claim for damages and declaratory relief by Plaintiffs and similarly situated workers for Bayou's failure to pay overtime wages as required by the FLSA, 29 U.S.C. §207(a).

74.     Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. § 216(b).

75.     Bayou violated the overtime wage provisions of the FLSA, 29 U.S.C. §207(a), by failing to pay Plaintiffs and similarly situated workers at a rate not less than one and one-half times their regular rate for those workweeks during 2021, 2022, 2023, and 2024 in which these individuals worked in excess of 40 hours.

76.     Bayou's violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of 29 U.S.C. §255(a). Bayou showed reckless disregard as to whether its failure to pay overtime wages was prohibited by the FLSA. Although it was on notice that the overtime exemption of the FLSA only applies to agricultural work, as demonstrated by the language in its clearance orders and temporary labor certification applications misrepresenting the work as agricultural and its H-2A attorney agent's intimate involvement in prior litigation involving the applicability of overtime to non-grower entities that contract with

farms to transport sugarcane to the mill, Bayou failed to adequately inquire or ascertain whether it was obligated to pay Plaintiffs and similarly situated workers at one and one-half their regular rate for work in excess of 40 hours in a workweek. Pay statements provided by Bayou to Plaintiffs and similarly situated workers show that it knew workers were employed in excess of 40 hours a week, but did not pay overtime

77.    Because of Bayou's violations of the FLSA's overtime provisions, Plaintiffs and others similarly situated are each entitled to recover their unpaid overtime wages, plus an additional equal amount in liquidated damages, and attorney's fees and costs in accordance with Section 16(b) of the Act, 29 U.S.C. § 216(b).

## COUNT II

## FLSA MINIMUM WAGES
### (Collective Action)

78.    This count sets forth a claim for damages and declaratory relief by Plaintiffs and similarly situated workers for Bayou's failure to pay minimum wages as required by the FLSA, 29 U.S.C. § 206(a).

79.    Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. § 216(b).

80.    Bayou violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and all others similarly situated at least the applicable minimum wage for every compensable hour of labor they performed during their first workweeks.

81.    The violations of the FLSA minimum wage provisions resulted from Bayou's failure to reimburse Plaintiffs and others similarly situated for certain pre-employment expenses they incurred which were primarily for Bayou's benefit, reducing Plaintiffs' and other H-2A workers' wages below the minimum wage for the first workweek. Those expense included

required drivers' licenses, medical examination fees, and the full cost of travel from the Plaintiffs' and others' homes in Mexico to the jobsite in Louisiana, lodging expenses while completing the H-2A visa application process, as set forth in paragraphs 51 to 54.

82.     Bayou's failure to pay Plaintiffs and others similarly situated their federally mandated minimum wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Bayou showed reckless disregard as to whether its failure to pay minimum wages in the first workweek was prohibited by the FLSA. Bayou was aware of its obligation to reimburse workers for pre-employment expenses, evidenced by its statement in its H-2A clearance orders that "[t]he employer understands that the Fair Labor Standards Act applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages" with respect to workers' pre-employment transportation costs, and Bayou utilized a form called "expenses report" that identified certain pre-employment costs incurred by workers. Yet, Bayou failed to sufficiently reimburse these costs or failed to adequately inquire or ascertain whether it was obligated to reimburse certain job-related expenses that were conditions of employment.

83.     Because of Bayou's violations of the FLSA, Plaintiffs and all others similarly situated are entitled to recover their unpaid minimum wages, plus an additional equal amount in liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT III

### FLSA Retaliation

84.     This count sets forth a claim for damages and declaratory relief by Plaintiffs for Bayou's retaliation conduct in violation of 29 U.S.C. § 215(a)(3) of the FLSA.

- 17 -

85.     Bayou violated 29 U.S.C. § 215(a)(3) by threatening to fire Plaintiffs and their co-workers; by calling the St. Martinville sheriff's office to remove Plaintiffs and their co-workers from the worker housing; and by terminating Plaintiffs.

86.     As set forth in paragraph 67, on October 21, 2024, Plaintiffs met with a Bayou supervisor to inquire about their pay rate and assert their rights to be paid in accordance with the terms of their employment contracts, which promised that Bayou would comply with all applicable Federal and state employment-related laws, including compensation for overtime hours.

87.     As set forth in paragraph 68, Bayou responded by threatening to fire Plaintiffs and their co-workers. These threats constituted an adverse action, taken in direct response to Plaintiffs' assertion of workplace rights protected by the FLSA.

88.     As set forth in paragraph 68, Bayou called the St. Martinville sheriff's office to remove Plaintiffs and their co-workers from the worker housing. This constituted an adverse action, taken in direct response to Plaintiffs' assertion of workplace rights protected by the FLSA.

89.     As set forth in paragraph 68, Bayou terminated Plaintiffs' employment.  These terminations constituted an adverse action, taken in direct response to Plaintiffs' assertion of workplace rights protected by the FLSA.

90.     Because of Bayou's violations of 29 U.S.C. § 215(a)(3) of the FLSA, Plaintiffs and others similarly situated are each entitled to recover compensatory damages, plus an additional equal amount in liquidated damages, punitive damages, and attorney's fees pursuant to 29 U.S.C. § 216(b).

## COUNT IV

### BREACH OF EMPLOYMENT CONTRACT

91.     This count sets forth a claim for damages resulting from Bayou's violations of the regulations governing the H-2A program as incorporated in Plaintiffs' employment contracts.  In accordance with 20 C.F.R. § 655.122(1), these employment contracts consisted of Bayou's temporary employment certification applications and accompanying clearance orders seeking workers for the 2021, 2022, 2023, or 2024 seasons and any obligations required under 8 U.S.C. § 1188, 29 C.F.R. part 501, or 20 C.F.R. §§ 655 Subpart B.

92.     As set forth in paragraph 24, Bayou was Plaintiffs' employer within the meaning of the H-2A regulations, 20 C.F.R. §§ 655.103(b).

93.     The temporary employment certification applications and accompanying clearance orders as described in paragraph 91 constituted valid employment contracts.

94.     In the H-2A clearance orders, Bayou promised to pay Plaintiffs the highest of the prevailing wage, AEWR, or federal or state minimum wage. Bayou also promised to comply with all applicable Federal and state employment-related laws, including compensation for overtime hours and to pay the lawful wage rate that applied to the actual work performed, as required under federal law. Pursuant to 8 U.S.C. § 1188, the H-2A program is for workers performing agricultural services, but because Bayou assigned workers to perform non-agricultural labor, to comply with the public policy purposes of the H-2A and H-2B programs of not adversely affecting the wages of U.S. workers similarly employed, the contract requires that Plaintiffs be paid the lawful and required rate for the non-agricultural work performed under the H-2B program, which is the visa program governing the pay rates of non-agricultural temporary foreign workers.

95.     Plaintiffs received H-2A visas pursuant to Bayou's certification applications and worked for Bayou as heavy truck drivers.

96.     Bayou breached the employment contracts with the Plaintiffs and the other class members by:

      a.    Failing to pay the Plaintiffs the wage rate applicable to the jobs they performed, which was transporting crops produced by independent growers in heavy tractor-trailer trucks to the sugar mill;

      b.    Failing to pay the Plaintiffs overtime wages when they worked more than 40 hours in a workweek, in violation of contract promises to comply with all federal laws related to employment;

      c.    Failing to pay or reimburse Plaintiffs for various transportation, subsistence, and other work-related expenses as required by their employment contracts and the FLSA;

      d.    Failing to pay the Plaintiffs all wages they were due upon the completion of their contracts each season as required by the Louisiana Wage Payment Act and in violation of contract promises to comply with all State laws related to employment; and

      e.    Threatening, intimidating, coercing, and discharging Plaintiffs in retaliation for exercising, on behalf of themselves and others, their rights under the H-2A rules and regulations, in violation of contract anti-retaliation promises.

97.     As a result of Bayou's actions as described in this count, Plaintiffs have been denied wages and benefits due them under their employment contract for which they are entitled to relief.

## COUNT V

## LOUISIANA WAGE PAYMENT ACT

98.     This count sets forth a claim for damages resulting from Bayou's violation of the Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631 and 23:632 ("LWPA").

99.     Bayou failed to pay Plaintiffs within 15 days of their resignation or discharge from employment the amounts due each of them under the terms of their employment, in violation of the Louisiana Wage Payment Act, La. Rev. Stat. 23:631(A)(1)(b).

100.     Bayou demanded their unpaid wages during the meeting with John Hebert on October 21, 2024 and later notified Bayou that they were owed unpaid wages after their termination. Bayou has not paid Plaintiffs for the full amount of wages they are owed under the LWPA. Bayou has withheld these wages in bad faith.

101.     As a result of Bayou's violations of the LWPA, Plaintiffs are each entitled to recover their unpaid wages along with penalty wages as prescribed by La. Rev. Stat. 23:632(A).

## COUNT VI

## UNJUST ENRICHMENT

102.     This count sets forth a claim for damages resulting from Bayou's unjust enrichment from Plaintiffs' employment, as authorized by La. Civ. Code art. 2298.

103.     During the 2021, 2022, 2023, and 2024 seasons, Bayou assigned Plaintiffs to drive heavy trucks and failed to pay them the applicable prevailing wage for the non-agricultural work performed described above and overtime wages to which they were entitled under the law. The prevailing wage measures the value of Plaintiffs' labor.

104.     Bayou was enriched by Plaintiffs' labor driving heavy trucks for long hours, in that it paid Plaintiffs the lower wage rate applicable to H-2A agricultural workers, but the actual

value of their labor was the much higher prevailing wage rate. Bayou was also enriched by falsely characterizing Plaintiffs' labor as agricultural and not paying overtime, when in fact it was nonagricultural work for which Plaintiffs were entitled to overtime.

105.    Plaintiffs were impoverished by Bayou's failure to pay the prevailing wages and overtime pay they were entitled to, and their impoverishment was directly connected to Bayou's enrichment.

106.    There was no justification or cause for Bayou's enrichment and Plaintiffs' impoverishment whereby obligations are created, modified, or extinguished.

107.    There are no other remedies at law available to Plaintiffs for Bayou's failure to pay prevailing wages.

108.    As a result of Bayou's actions, Bayou was enriched without cause at the expense of Plaintiffs, and Plaintiffs are entitled to compensation as authorized by La. Civ. Code art. 2298.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter an order:

a.    Declaring that Defendant, by the acts and omissions described above, violated Plaintiffs' rights under the overtime provisions of the FLSA at 29 U.S.C. § 207(a) as set forth in Count I, under the minimum wage provisions of the FLSA at 29 U.S.C. § 206(a) as set forth in Count II, and under the anti-retaliation provisions of the FLSA at 29 U.S.C. § 215(a)(3) as set forth in Count III;

b.    Granting judgment in favor of Plaintiffs on their Count I, II, and III claims under the overtime, minimum wage, and anti-retaliation provisions of the FLSA in the amount of the unpaid overtime and minimum wages due each

of them, compensatory damages, as well as an equal amount as liquidated

damages, and punitive damages;

c.      Granting judgment in favor of those similarly situated employees

described in Count I and Count II who timely opt-in and awarding each of

them the amount of FLSA unpaid overtime and minimum wages due to

him or her, as well as an equal amount as liquidated damages;

d.      Granting judgment in favor of Plaintiffs on their breach of contract claims

as set forth in Count IV and awarding each of them actual and

consequential damages;

e.      Declaring that Defendant, by the actions described above, violated

Plaintiffs' rights under their H-2A contracts, including when it unlawfully

retaliated against Plaintiffs as set forth in Count IV;

f.      Granting judgment in favor of Plaintiffs on their claims under the

Louisiana Wage Payment Act set forth in Count V and awarding each of

them the unpaid wages due them for their employment and penalty wages

as provided in La. Rev. Stat. 23:632(A);

g.      In the alternative to granting judgment in favor of Plaintiffs on their claims

in Count IV, granting judgment in favor of Plaintiffs as set forth in Count

VI for Defendant's unjust enrichment and Plaintiffs' impoverishment, and

awarding Plaintiffs compensation due them for their labor;

h.      Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C.

§216 and La. Rev. Stat. 23:632(A);

i.      Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

j.      Awarding Plaintiffs the costs of this action; and

k.    Granting such further relief as this Court deems just and appropriate.


Respectfully submitted,

*/s/Hannah Wolf*
Hannah Wolf, TN Bar No. 034349
*Lead Trial Attorney
*Pro Hac Vice Motion Forthcoming*
Caitlin Berberich, TN Bar No. 025780
*Pro Hac Vice Motion Forthcoming*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org


*/s/ Daniel Davis*
Daniel Davis, LA No. 30141
*Admitted to Practice in M.D. La.*
Estes Davis Law, LLC
4465 Bluebonnet Blvd, Suite A
Baton Rouge, LA 70809
Telephone: (225) 336-3394
Facsimile: (225) 384-5419
dan@estesdavislaw.com


ATTORNEYS FOR PLAINTIFFS