**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

JULIAN ALEJANDRO FLORES                        CIVIL ACTION
COLCHADO, ET AL.

VERSUS                                        NO. 24-1012-SDD-EWD

BAYOU SUGAR GROWERS, INC.

**MOTION HEARING REPORT AND ORDER**

An in-person hearing was held before Magistrate Judge Erin Wilder-Doomes on May 20, 2026 with the following participants:

PARTICIPANTS:    **Caitlin I. Berberich**        **Molly C. McDiarmid**
                 **Nichole M. Bucheri**[1]       **Kellen J. Matthews**
                 Counsel for Plaintiffs,         Counsel for Defendant,
                 Julian Alejandro Flores         Bayou Sugar Growers, Inc.
                 Colchado, *et al.*

The hearing was set by the Court to address several outstanding matters and motions, *to wit*: finalization of the Notice to Similarly Situated Workers Pursuant to 29 U.S.C. § 216(b) ("Notice");[2] Motion for Leave of Court to File Plaintiffs' First Amended Complaint, filed by all Plaintiffs ("Motion for Leave to Amend");[3] the Motion to Quash Subpoenas to Testify at a Deposition and Produce Documents Issued to Brandon E. Davis, or Alternatively, for Entry of Protective Order ("Motion to Quash Davis Subpoenas"), filed by Defendant Bayou Sugar Growers, Inc. ("BSG");[4] the Motion to Quash and/or for Protective Order Regarding Plaintiffs'

---

[1] Ms. Bucheri participated in the hearing by telephone with Court permission.

[2] *See* R. Doc. 56, the minutes of the January 15, 2026 hearing on the Motion for Approval of Notice to Similarly Situated Workers Pursuant to 29 U.S.C. § 216(b) and an Order to Produce Contact Information filed by Plaintiffs, which was opposed by Defendant Bayou Sugar Growers, Inc. R. Docs. 22, 22-1 (proposed Notice) 23, 26. At the January hearing, three discrete issues with the Notice were addressed, and two of the three were resolved. The remaining issue to be finalized was the dates of the seasons to be listed in the Notice.

[3] R. Doc. 39, and *see* the Opposition at R. Doc. 44 and the Reply at R. Doc. 47. There are currently twelve named Plaintiffs and one opt-in Plaintiff.

[4] R. Doc. 66 and *see* the Opposition at R. Doc. 71.

cv25cT2:00

Subpoena to Hancock Whitney Bank ("Motion to Quash Bank Subpoena"), filed by BSG;[5] the

Motion to Compel Discovery, filed by all Plaintiffs;[6] and the Motion for Leave to file a Supplement

to Memorandum in Support of Plaintiffs' Motion to Compel Discovery, and Plaintiffs' Responses

to Defendants' Motions to Quash Subpoenas ("Motion to Supplement").[7]

<u>Leave of Court is Required Before Filing of Any Further Discovery Motions</u>

Discovery in this case, which was filed in 2024, has been unnecessarily protracted by the

parties' inability to resolve disputes without Court involvement, despite the Court's strong

encouragement to make every effort to do so.[8] The pending motions are lengthy, with hundreds of

pages of attachments, the review of which has required significant judicial resources. Accordingly,

and to move this case more efficiently to resolution, the scheduling order will be amended pursuant

to Fed. R. Civ. P. 16(b)(3)(B)(v) to require the parties to seek a conference with the Court before

filing any further discovery motions.[9]

<u>Finalization of the Notice</u>

The only remaining issue required to finalize the Notice of the collective action to the

potential opt-in Plaintiffs are the seasons to be included. The parties were ordered to confer on this

issue and to file a joint notice stating their positions by January 31, 2026,[10] which they filed on

January 30, 2026.[11] After review of the parties' arguments and authority, the Notice will include

the 2022 through 2024 sugar cane seasons, as originally contemplated, as well as the 2025 season,

---

[5] R. Doc. 68 and *see* the Opposition at R. Doc. 72.

[6] R. Doc. 69 and *see* the Opposition at R. Doc. 73.

[7] R. Doc. 75.

[8] R. Docs. 51, 56.

[9] Fed. R. Civ. P. 16(b)(3)(B)(v) provides that the scheduling order may "direct that before moving for an order relating to discovery, the movant must request a conference with the court."

[10] R. Doc. 56, pp. 2-3.

[11] R. Doc. 58.

as agreed by the parties. The Fifth Circuit's decision in *Sandoz v. Cingular Wireless, L.L.C.* expressly finds that the opt-in plaintiffs' diligence may control the outcome of a claim for equitable tolling.[12] Since the issue at this time is just a question of who gets notice, the more prudent course of action is to allow notice to all potential opt-in plaintiffs. Whether the claims of any opt-in plaintiffs from the 2022 seasons should be dismissed or subject to equitable tolling can be addressed, as applicable, when ripe. For example, there may be no opt-in plaintiffs for the 2022 season. If there are, BSG may take whatever action is necessary to seek dismissal of any claims it believes are untimely. Similarly, if Plaintiffs believe equitable tolling as to those claims is appropriate, Plaintiffs can raise the tolling argument at that time. Plaintiffs will be ordered to finalize the Notice as discussed here, and in the minutes of the January 15, 2026 hearing.

Motion for Leave to Amend

Plaintiffs' Motion for Leave to Amend,[13] which is opposed by BSG,[14] was timely filed under the current scheduling order and is, therefore, governed by the liberal standard of Fed. R. Civ. P. 15. 15(a), which provides that leave to amend "shall be freely given when justice so requires." the Fifth Circuit has stated that "leave to amend should be granted liberally."[15] A court should consider the following five factors to determine whether to grant a party leave to amend a complaint under Rule 15: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to

---

[12] 700 Fed.Appx. 317, 321 (5th Cir. 2017) ("The Opt-In Plaintiffs' failure to conduct any diligence voids Sandoz's equitable tolling claim.").

[13] *See* R. Doc. 21 and Plaintiffs' Reply at R. Doc. 47.

[14] R. Doc. 44.

[15] *Robertson v. Plano City of Texas*, 70 F.3d 21, 22 (5th Cir. 1995).

cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. Absent any of these factors, the leave sought should be freely given.[16]

The Motion for Leave to Amend seeks leave to name two new Plaintiffs, Carlos Hernandez Garcia and Juan Gutierrez Saldaña, who are alleged to be similarly situated to the current Plaintiffs; to name a new defendant, the Louisiana Sugar Cane Cooperative, Inc. ("LASUCA") on Plaintiffs' Fair Labor Standard Act ("FLSA") and breach of contract claims; and to add additional allegations in support of the foregoing. The addition of the two new Plaintiffs is unopposed by BSG, and the allegations sufficiently establish that they are similarly situated to the current Plaintiffs;[17] therefore, the Motion for Leave to Amend will be granted as to the addition of the two new Plaintiffs.

Next, Plaintiffs seek to add LASUCA as an FLSA single or joint employer of the Plaintiffs. Plaintiffs allege that LASUCA controlled several aspects of Plaintiffs' employment and that BSG and LASUCA shared common management structure, facilities, *etc*. Plaintiffs assert that there is no prejudice in adding LASUCA because it is related to BSG and BSG has been aware of LASUCA during the pendency of this case. In response, BSG argues that the two companies are entirely distinct, despite that they share employees, and LASUCA was not the signatory on any H2-A filings, *etc*.; the addition of LASUCA is futile because the allegations of the First Amended Complaint ("FAC") do not satisfy the governing "economic realities test," which focuses on the

---

[16] *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (other citations omitted).

[17] R. Doc. 39, p. 3 (alleging the new Plaintiffs were employed under the same contracts during the same seasons, performed the same type of work, and share the same wage claims).

employment relationship between the employer and workers;[18] and, BSG will face prejudice if LASUCA is added.

Here, the FAC sufficiently alleges that LASUCA engaged in acts that meet three economic reality factors, *i.e.*, that LASUCA hired and terminated some Plaintiffs; that LASUCA employees directed the work of Plaintiffs, including their schedules, locations, and assignments; and that LASUCA determined Plaintiffs' rate and/or method of payment.[19] Therefore, the Motion for Leave to Amend will be granted as to the addition of LASUCA on the FLSA claims.

Whether Plaintiffs have sufficiently alleged facts to assert a plausible breach of contract claim against LASUCA is a closer question. Neither Plaintiffs' Motion for Leave (which does not have a Memorandum in Support) nor Plaintiffs' Reply brief address the breach of contract claim in depth. Plaintiffs argued that their allegations in support of adding LASUCA on the FLSA claim also apply to adding LASUCA on the breach of contract claim, *i.e.*, whether the two companies operate as a single, unified entity. BSG asserts that, while the common enterprise test is potentially relevant, the common enterprise factors, *e.g.*, common management and centralized control, are not met because the two entities are distinct, although some employees work for both companies. BSG also argued that a breach of contract claim does not lie because LASUCA is not a party to any of the pertinent federal filings or contracts at issue in this case, which is significant. Rather,

---

[18] *See Rule v. S. Indus. Mech. Maint. Co.,* No. 16-1408, 2019 WL 2881545, at *2 (W.D. La. July 3, 2019) ("The court observes that under the FLSA, an "[e]mployer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (internal quotation marks omitted). The Fifth Circuit uses the 'economic reality' test to assess whether there is an employer/employee relationship. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012) (citations omitted). In order to resolve whether an individual or entity is an employer, the court must consider whether the alleged employer: '(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted).'"). BSG asserted in brief that Plaintiffs' argument relied on the inapplicable "common enterprise" test, *i.e.*, the extent to which the two companies are interrelated.

[19] *See* R. Doc. 39-1, ¶¶ 33-35, 80.

BSG, for example, sponsored the H2-A applications, signed the contracts, and paid Plaintiffs. Plaintiffs argued that LASUCA could still be an employer under the regulations even if it did not execute any of the filings or contracts.

It is not clear that the breach of contract claim is futile, and the remaining Rule 15 factors have not been shown. Moreover, Plaintiffs are granted leave to assert their FLSA claims against LASUCA. As such, and because leave to amend should be freely granted, the Motion for Leave will be granted as to Plaintiffs' breach of contract claim against LASUCA, as well as to the assertion of newly added facts in support of Plaintiffs' claims.

The Motion to Quash the Davis Subpoenas

Rule 45(d)(3) provides:

> "Quashing or Modifying a Subpoena. (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies…"

Rule 26(c)(1)(A) provides, in pertinent part:

> (c) Protective Orders.
> (1) *In General.* A party or any person from whom discovery is sought may move for a protective order … The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery…

Plaintiffs served a deposition subpoena and subpoena duces tecum on Davis to obtain information from him primarily relating to his role as BSG's agent in preparing BSG's H2-A applications. Plaintiffs allege that this information is relevant to BSG's good faith defense to

6

Plaintiffs' FLSA claims.[20] BSG seeks to quash the subpoenas, or alternatively, for a protective order shielding Davis from having to comply with them, on the grounds that the testimony and information sought is protected by the attorney-client and/or work product privileges.[21] While Davis is not enrolled as BSG's counsel in this case, BSG asserts that Davis is currently representing BSG as legal counsel, has been privy to confidential communications, and has provided legal consultation regarding this case. BSG asserts that Davis also served in his role as legal counsel when he prepared BSG's H2-A applications; therefore, the information sought by the subpoenas is still protected by the attorney-client privilege. Alternatively, BSG asserts that, even if the subpoena is not quashed, Davis should be shielded by a Rule 26(c) protective order from being deposed because Plaintiffs have not identified any deposition topics for Davis, depositions of counsel are disfavored as burdensome and disruptive, and Plaintiffs have not satisfied the three-prong test handed down in *Shelton v. American Motor Corporation*, which has been used by courts in this Circuit.[22]

Plaintiffs contend that they are not required to identify deposition topics for Davis because he was served with the subpoena in his personal capacity.[23] Plaintiffs argue that Davis was not acting as an attorney when he prepared BSG's applications, as it is not required that the applications be prepared by attorneys. Plaintiffs contend that *Shelton* does not apply because Davis

---

[20] R. Doc. 66-2, p. 3, R. Doc. 66-3, p. 1 and *see* Plaintiffs' Opposition at R. Doc. 71.

[21] R. Doc. 66.  Plaintiffs did not challenge BSG's standing to object to the Davis subpoenas.

[22] *See WIII Uptown, LLC v. B&P Rest. Grp., LLC,* No. 15-51, 2016 WL 4620200, at *4 (M.D. La. Sept. 6, 2016 ("[T]his court has previously applied *Shelton v. American Motors Corp*., 805 F.2d 1323 (8th Cir. 1986) to determine the propriety of allowing opposing counsel's deposition. *Hall v. Louisiana*, 2014 WL 1652791, at *4 (M.D. La. April 23, 2014). This court has further explained that under *Shelton*, opposing counsel may be deposed only in 'limited circumstances' and that '[r]egardless of the movant, *Shelton* makes clear that the party asking to depose its opponent's counsel bears the burden of proof.' *Id*.").

[23] This position is questionable as a practical matter because it fails to give advance notice to the subpoenaed attorney or his counsel of the proposed areas of inquiry and whether there are any topics that could be comprised of non-privileged communications, nor does it permit counsel to discuss the scope of the information sought in advance of the deposition.

is not enrolled in this case, and his role as a consulting attorney does not change their position; however, Plaintiffs also claim that they are not seeking privileged information. Review of Plaintiffs' subpoena duces tecum requests reflect otherwise, as some topics do appear to request privileged information, *e.g.*, Request No. 17.[24] Plaintiffs explained that, at the time the requests were served, they were not aware of Davis's role in this case. Plaintiffs stated that they now primarily seek information from Davis in connection with the preparation of BSG's H2-A applications; specifically, his assessment of whether BSG's work qualified as agricultural work under the H2-A program governing agricultural workers, who are overtime exempt. Plaintiffs contend that BSG put this advice "at issue" because its decisionmaker, John Herbert, testified in BSG's Rule 30(b)(6) deposition that BSG relied on the Office of Foreign Labor Certification's ("OFLC") certification of BSG's H2-A clearance orders[25] in determining that BSG was engaged in agricultural work and was thus exempt from paying overtime to its H2-A workers; the H2-A applications were drafted with Davis's assistance; and Hebert relied on Davis's advice regarding BSG's status as an agricultural employer. Plaintiffs also argued that, as raised in their Motion to Supplement, Hebert implicitly waived the attorney-client privilege because he repeatedly testified in LASUCA's Rule 30(b)(6) deposition that he drafted the H2-A applications with counsel's advice. Plaintiffs asserted that BSG may testify at trial that it relied on the advice of counsel in the preparation of the H2-A applications, so Plaintiffs should be able to depose Davis about his advice and the preparation of the applications now, including the allegedly false representations contained in the H2-A applications about the work that Plaintiffs would perform.

---

[24] R. Doc. 66-3, pp. 7-9 (and *see* No. 17 ("All documents discussing or mentioning this lawsuit.")).

[25] For ease of reference, the clearance orders and H2-A applications will be collectively referred to as "H2-A applications."

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any **nonprivileged** matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."[26] "The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26…."[27] "A party invoking the attorney-client privilege must establish: (1) that there was a communication between client and counsel; (2) the communication was intended to be confidential; (3) the communication was, in fact, kept confidential; and (4) the communication was made for the purpose of obtaining or providing legal advice."[28]

Regarding Davis's deposition subpoena, and applying *Shelton*, this Court has explained that "courts should only allow an opponent's counsel to be deposed in limited circumstances – *i.e.*, where the party seeking the deposition has shown that: (1) 'no other means exist to obtain the information than to depose opposing counsel;' (2) 'the information sought is relevant and nonprivileged'; and (3) 'the information is crucial to the preparation of the case.'"[29] Plaintiffs bear

---

[26] *WIII Uptown, LLC,* 2016 WL 4620200, at *3 (emphasis added), citing Fed. R. Civ. P. 26(b)(1).

[27] *Equal Employment Opportunity Commission v. BDO USA, L.L.P.,* 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted).

[28] *WIII Uptown, LLC,* 2016 WL 4620200, at *8, citing *Bross v. Chevron U.S.A. Inc.,* No. 06-1523, 2009 WL 854446, at *3 (W.D. La. Mar. 25, 2009) (citing *U.S. v. Construction Products Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996)).

[29] *WIII Uptown, LLC,* 2016 WL 4620200, at *9 (M.D. La. Sept. 6, 2016), citing *Hall v. Louisiana*, 2014 WL 1652791, at *4 (M.D. La. April 23, 2014).

the burden of proving these factors,[30] which they have not done in this case. The fact that non-attorneys can complete H2-A applications does not necessarily mean that Davis was not acting in his role as an attorney when he completed the applications for BSG. However, BSG only provided statements in brief and at the hearing regarding Davis's role as legal counsel in performing this task, which is insufficient. On or before June 11, 2026, Davis will be ordered to file an affidavit into the record that provides details regarding his role as counsel in assisting BSG throughout the H2-A process, including in preparing its H2-A applications.[31]

Plaintiffs contend that the H2-A applications, drafted with Davis's assistance and on which BSG relied regarding its agricultural status, contained misrepresentations, including the description of the work Plaintiffs would perform. The misrepresentations allegedly demonstrate that BSG had taken a legal position regarding its eligibility for agricultural treatment under the law prior to its certifications, and to Plaintiffs, this suggests a scheme to misrepresent BSG's agricultural status in the H2-A applications prior to seeking any workers. Plaintiffs thus seek to depose Davis, BSG's counsel at all pertinent times, on what advice he gave to BSG, as a legal matter, which BSG relied on regarding its status as an agricultural employer. In other words, Plaintiffs seek classic attorney-client privileged information, and Plaintiffs have not shown that BSG either put Davis's advice at issue and/or implicitly waived the attorney-client privilege by relying on Davis's advice. Plaintiffs conceded that Hebert did not testify that he *only* relied on Davis's advice regarding BSG's agricultural status, such that BSG was using Davis's advice as a sword; rather, Hebert testified that he also relied on the OFLC's certifications of BSG's H2-A

---

[30] *Hall,* 2014 WL 1652791, at *4. ("Regardless of the movant, *Shelton* makes clear that the party asking to depose its opponent's counsel bears the burden of proof.").

[31] After Davis's affidavit is filed, a status conference with the Court may be requested to discuss the affidavit, if necessary, and after the parties have conferred.

applications, as well as the nature of BSG's work and its organization.[32] BSG's affirmative defenses also do not state that BSG acted in good faith based on advice of counsel.[33] Plaintiffs' attempt to depose Davis is based on *Plaintiffs'* supposition about misrepresentations within the H2-A applications, not because BSG put Davis's advice at issue. Furthermore, Plaintiffs fail to sustain their burden under *Shelton* because they have not shown that they cannot get the information that they seek from Davis elsewhere; in fact, Plaintiffs admit that they have already obtained testimony from other witnesses regarding the work that Plaintiffs did driving heavy trucks, to the exclusion of the other tasks that were listed in the H2-A applications.[34] Under the circumstances, Davis's corroborating testimony on this point would not meaningfully add to what has already been testified to by other witnesses. Therefore, the deposition subpoena to Davis will be quashed.[35]

---

[32] R. Doc. 71-2, p. 28.

[33] R. Doc. 17, p. 23 ("Twenty-Eighth Affirmative Defense  Plaintiffs' claims, including their claims brought on behalf of persons allegedly 'similarly situated' to them, are barred because any alleged acts or omissions by Defendant was in good faith and in conformity with and in reliance on applicable administrative regulations, orders, rules, approvals, interpretations, or administrative practices or enforcement policies of the U.S. Department of Labor with respect to the class of employers to which Defendant belong" and "Twenty-Ninth Affirmative Defense  Defendant at all times acted in good faith with reasonable grounds for believing that it acted in compliance with applicable law and, therefore, Plaintiffs' claims, including their claims brought on behalf of persons allegedly 'similarly situated' to them, for liquidated damages are barred.").

[34] The crime-fraud exception argued by Plaintiffs, which only applies in rare circumstances, does not vitiate the privilege here. *Raymond v. Unum Group*, No. 20-352, 2022 WL 10208218, *5 (M.D. La. Oct. 17, 2022), citing, *e.g.*, *Covey v. Colonial Pipeline Co.*, Nos. 18-1121; 19-923; 19-1507, 336 F.R.D. 514 (N.D. Ala. Aug. 4, 2020) (citing *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1335 (11th Cir. 2018)). Plaintiffs rely primarily on allegations from BSG's H2-A applications that it contends are misrepresentations, allegedly supported by deposition testimony, which are allegations Plaintiffs also asserted in their Complaint. R. Doc. 1, *e.g.*, pp. 8-10, 15-16 and R. Doc. 71, pp. 17-18.  However, Plaintiffs have not made a sufficient showing that BSG or Davis intended to further a crime or fraud during the preparation of the H2-A applications, including 'evidence of an intent to deceive;" which is one of the elements of a prima facie showing. *Southern Scrap Material Co.,* 2003 WL 21474479, at *2 (other citations omitted) and *InPwr Inc. v. Olson Restoration LLC,* No. 21-821, 2022 WL 2286182, at *3 (W.D. La. June 23, 2022) (internal citations omitted). To the contrary, while BSG's president may have testified that he did not know why certain tasks were included on the H2-A applications, Hebert testified that the (allegedly misrepresented) tasks were included "[b]ecause the need for that could arise at any moment. And we believe there's a need, from year to year." Therefore, BSG provided a non-fraudulent reason for the tasks listed in the applications. R. Doc. 75-2, p. 15.

[35] To the extent that BSG attempts to assert at trial that it relied on the advice of counsel, Plaintiffs can seek to exclude the testimony through a motion in limine.

Regarding the subpoena duces tecum to Davis, BSG stated that it has already produced many, if not all, non-privileged communications from Davis to third parties in response to Plaintiffs' requests for production to BSG, and BSG's production is ongoing, as are communications amongst counsel regarding discovery. The privilege log in the record, which primarily reflects documents exchanged between (or copied among) Davis and BSG and withheld based on attorney-client privilege, is related to the subpoena duces tecum to Davis per defense's counsel's clarification. However, the privilege log is insufficient because it does not adequately describe the withheld documents,[36] which is required so that Plaintiffs can test the privilege. "[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver."[37] Therefore, on or before June 11, 2026, BSG shall produce a revised and more detailed privilege log to Plaintiffs. The Motion to Quash the subpoena duces tecum will be terminated, without prejudice to re-urging, following the testing of the privilege(s) asserted in the log and further conference of counsel. The quashing of Davis's deposition subpoena and the order to BSG to provide a revised privilege log may moot some of the requests to Davis, particularly considering Plaintiffs' admission that they were not aware of Davis's role at the time it was served.

<u>The Motion to Quash the Bank Subpoena</u>

Plaintiffs served a subpoena duces tecum on Hancock Whitney Bank (the "Bank") seeking production of the financial information of BSG; LASUCA; and LASUCA's wholly owned entity,

---

[36] R. Doc. 69-19.

[37] *Cashman Equipment Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at * 2 (M.D. La. Aug. 11, 2009) (collecting cases).

Lasuca Farms, LLC[38] on the grounds that the information is relevant to the interrelationship of these companies, including the identity of Plaintiffs' true employer. The requests to the Bank also overlap with requests in the pending Motion to Compel. Further, Plaintiffs have also subpoenaed LASUCA directly for financial information but have not received a response. BSG moved to quash the Bank subpoena, on several grounds, or alternatively, moved for a Rule 26 protective order, either shielding the Bank entirely from complying or limiting the scope of the requests.[39] However, BSG conceded that, because the subpoena was served on the Bank, a third party, BSG does not have standing to quash the subpoena under Rule 45 on confidentiality or overbreadth grounds, so BSG is limited to seeking a Rule 26 protective order.

BSG argues that the subpoena requests are very broad, as they seek information regarding approximately fifty individual member farms, involving many transactions that have no bearing on Plaintiffs' claims in this case, such as payments for hauling and for sugar cane. BSG has produced its bank statements and has agreed to produce canceled checks and acknowledges that its objections to production on the grounds that LASUCA is not a party are now moot.

Plaintiffs allege that the bank statements and the BSG records previously produced do not provide the information that Plaintiffs want to review to determine Plaintiffs' actual employer. Plaintiffs want to review information that discloses transactions relating to the payment and allocation of operational expenses between these entities (*e.g.*, payments for overhead, insurance, housing, fees for the H2-A applications, *etc.*), and in particular, documents that controller, Sean Kidder, recently testified to, including internal spreadsheets and "due to/from" accounts that show informal debits and credits between the companies. BSG alleges that Plaintiffs' specific request

---

[38] R. Doc. 68-1, pp. 1-7.

[39] R. Doc. 68.

for overhead/operational expenses is new, but some operational information between LASUCA and BSG has already been produced. BSG also contends that the interrelationship between the entities is not material to the issues in this case involving Plaintiffs' wages.

The Court provided guidance. The scope of discovery is broad but must be relevant and proportional to the needs of the case. Here, information relating to employer status, including how the three companies are interrelated, is relevant to Plaintiffs' claims and legal theories, which recognize the possibility of multiple employers, and the determination of liability. Discussion was had regarding BSG's suggestion for redaction of irrelevant transactions, which is a possibility for production from LASUCA in response to its subpoena but not for any production by the Bank, as that would be burdensome to the Bank and, perhaps, impossible because the Bank lacks knowledge of what transactions would be considered "relevant." Another potential resolution discussed was for the Bank to produce the information to defense counsel in response to the Bank subpoena so that defense counsel can redact it; however, the Bank statements do not contain the information that Plaintiffs actually seek, per Plaintiffs. Guidance was also provided as to Plaintiffs' request for deposition(s), primarily of Kidder, relating to the newly produced documents, which request seems reasonable if the deposition is limited to questions regarding the documents newly produced (or if new testimony changes prior testimony), and in light of the addition of LASUCA as a defendant. The parties have also discussed a protective order, which BSG requires due to confidentiality concerns, but which has not been finalized.

The hearing was briefly adjourned to permit counsel to discuss potential resolutions in accordance with their Rule 37 obligations. Following discussion, Plaintiffs agree that they will advise the Bank that it does not need to comply with the Bank subpoena in favor of defense counsel obtaining the relevant Bank records and redacting irrelevant transactions such as hauling and cane

payments. BSG also agreed to produce BSG's documents regarding internal operational transactions, *e.g.,* the due to/from records. Accordingly, in light of the parties' agreement, the Motion to Quash the Bank Subpoena will be terminated, without prejudice to re-urging, as necessary.[40]

Lastly, the parties made an oral motion to extend the fact discovery deadline to August 18, 2026; the deadline to submit supplemental expert reports, if any, to August 18, 2026 for Plaintiff and to September 18, 2026 for Defendants;[41] and the deadline to file dispositive and *Daubert* motions to October 15, 2026. A revised scheduling order will be entered with these deadlines as well as a new trial date.

Motion to Compel and Motion to Supplement

The Motion to Compel[42] and Motion to Supplement[43] will both be terminated without prejudice in light of the rulings at the hearing and because it is not clear which requests are still outstanding, in light of BSG's rolling production and its agreement to produce additional documents. Furthermore, some of BSG's objections are mooted by the addition of LASUCA as a defendant, and some of the requests may also be mooted depending on Davis's affidavit.

Accordingly,

**IT IS ORDERED** that the current scheduling order is **AMENDED** pursuant to Fed. R. Civ. P. 16(b)(3)(B)(v) to require the parties to seek a conference with the Court before filing any further discovery motions.

---

[40] The Motion may be re-urged, if necessary, but only after further conference of the parties. Plaintiffs stated that the Bank subpoena will be withdrawn if they receive what they have requested from the Bank from defense counsel.

[41] The parties stated that expert discovery is complete.

[42] R. Doc. 69.

[43] R. Doc. 75.

**IT IS FURTHER ORDERED** that, in addition to the Court's holdings regarding the Notice to Similarly Situated Workers Pursuant to 29 U.S.C. § 216(b) during the January 15, 2026 hearing,[44] the Notice will include the 2022 through 2025 sugar cane seasons.

**IT IS FURTHER ORDERED** that the Motion for Leave of Court to File Plaintiffs' First Amended Complaint, filed by all Plaintiffs,[45] is **GRANTED.** The Clerk of Court is directed to docket the First Amended Complaint[46] into the docket of this matter, which will become Plaintiffs' operative complaint.

**IT IS FURTHER ORDERED** that, on or before **June 11, 2026,** Defendant Bayou Sugar Growers shall file Brandon E. Davis's affidavit into the record (further leave of Court is not required), and shall produce a revised, detailed privileged log to Plaintiffs, that complies with this Order.

In light of the foregoing Order, and the parties' agreement,

**IT IS FURTHER ORDERED** that the Motion to Quash Subpoenas to Testify at a Deposition and Produce Documents Issued to Brandon E. Davis, or Alternatively, for Entry of Protective Order, filed by Defendant Bayou Sugar Growers, Inc.,[47] is **GRANTED IN PART AND TERMINATED IN PART WITHOUT PREJUDICE**, as set forth herein.

**IT IS FURTHER ORDERED** that the Motion to Quash and/or for Protective Order Regarding Plaintiffs' Subpoena to Hancock Whitney Bank filed by Bayou Sugar Growers[48] is

---

[44] R. Doc. 56.

[45] R. Doc. 39.

[46] R. Doc. 39-1.

[47] R. Doc. 66.

[48] R. Doc. 68.

**TERMINATED WITHOUT PREJUDICE** considering the parties' agreement regarding production of responsive documents, as set forth above.

**IT IS FURTHER ORDERED** that the Motion to Compel Discovery[49] and the Motion for Leave to file a Supplement to Memorandum in Support of Plaintiffs' Motion to Compel Discovery,[50] both filed by Plaintiffs, are **TERMINATED WITHOUT PREJUDICE** or the reasons set forth herein.

**IT IS FURTHER ORDERED** that an amended Scheduling Order will be issued extending the fact discovery deadline to August 18, 2026; the deadline to submit supplemental expert reports to August 18, 2026 for Plaintiffs and to September 18, 2026 for Defendants; the deadline to file dispositive and *Daubert* motions to October 15, 2026; and setting a new bench trial date and pretrial deadlines.

Signed in Baton Rouge, Louisiana, on June 4, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[49] R. Doc. 69.

[50] R. Doc. 75.